1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 - - - - - - - - - - - - - - - - X
                                 :
 ROBERT DOYLE,                   : 18CV4439 (JBW)
                                 :
         Plaintiff,              :
                                 :
                                 : United States Courthouse
     -against-                   : Brooklyn, New York
                                 :
                                 :
 DOUGLAS C. PALMER,              : February 19, 2019
                                 : 10:30 a.m.
         Defendant.              :
                                 :
                                 :
                                 :
 - - - - - - - - - - - - - - - - X

        TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
          BEFORE THE HONORABLE JACK B. WEINSTEIN
              UNITED STATES SENIOR DISTRICT JUDGE


                    A P P E A R A N C E S:

 For the Plaintiff:    LAW OFFICE OF TODD C. BANK
                         119-40 Union Turnpike, Fourth Floor
                         Kew Gardens, New York 11415
                       BY: TODD C. BANK, ESQ.

 For the Defendant:    UNITED STATES ATTORNEY'S OFFICE/EDNY
                         271a Cadman Plaza East
                         Brooklyn, New York  11201
                       BY: MATTHEW J. MODAFFERI, ESQ.




 Court Reporter:     SOPHIE NOLAN
                     225 Cadman Plaza East/Brooklyn, NY 11201
                     NolanEDNY@aol.com
 Proceedings recorded by mechanical stenography, transcript
 produced by Computer-Aided Transcription
```

Proceedings                                                          2

1            (In open court.)
2            (The Hon. Jack B. Weinstein, presiding.)
3            THE COURTROOM DEPUTY:  Civil cause for motion, *Doyle*
4    *v. Palmer*.
5            Counsel note your appearances, please.  For the
6    plaintiff.
7            MR. BANK:  Good morning.  Todd Bank for the
8    plaintiff.
9            THE COURTROOM DEPUTY:  For the defendant.
10           MR. MODAFFERI:  Good morning, Your Honor.  Matthew
11   Modafferi on behalf of Douglas Palmer in his official capacity
12   as a clerk of this court.
13           THE COURT:  It is your motion.
14           MR. BANK:  Yes.
15           THE COURT:  I will hear you.
16           MR. BANK:  I don't know that I have anything to add
17   to what's in the papers, but there's no local rule of this
18   court that authorizes a judge to force a represented party to
19   appear for oral argument.  Even if there were such a rule, and
20   there is not, it would not be valid because the local rules
21   and the judge's individual rules as well must be consistent
22   with the Federal Rules of Civil Procedure and under those
23   rules it's very clear that there's only one instance in which
24   a judge can require a represented party to make a pretrial
25   appearance and that's for a Rule 16 conference.

1      There's also the broader fact that under 28 USC
2  1654, a party has a right, which Mr. Doyle has exercised, to
3  hire an attorney.  A lot of people hire attorneys so that they
4  don't have to go to court; so that they can continue to run
5  their lives and have their attorney represent them.
6      And, obviously, this hearing that's scheduled for
7  tomorrow is obviously not a Rule 16 conference and there's not
8  been any evidentiary hearings scheduled or anything like that
9  and Mr. Doyle should not be required to appear.  That's
10 probably why he hired me.
11     MR. MODAFFERI:  Your Honor, we didn't formally
12 oppose plaintiff's motion for reconsideration, but practically
13 speaking this is a case where the plaintiff is seeking
14 admission to the bar of this court without having to submit a
15 character affidavit and also is trying to avoid having to come
16 to court in response to Your Honor's order.  So, I believe
17 that Your Honor's order that Mr. Doyle shall appear in person
18 with counsel is proper.
19     THE COURT:  Yes.  Well, there are references in
20 Federal Rule of Civil Procedure 1 that they should be
21 construed, administered and employed by the Court and the
22 parties to secure a just, speedy and inexpensive determination
23 of every action and proceeding.  That gives me little more
24 power under the federal rules.
25     MR. BANK:  Well, it arguably gives some power or as

1   a guide to interpreting the federal rules, but there is no
2   federal rule at issue here.  There is no federal rule that
3   warrants a requirement that Mr. Doyle appear.  It's not even a
4   question of interpreting the rules.
5              If there were such a rule that arguably could be
6   interpreted that would be one matter, but there isn't.  And
7   Federal Rule 1 does not add to the rules.  It's not a
8   substantive -- as much as a Federal Rule of Civil Procedure
9   can be substantive -- it's not a substantive rule by itself.
10  Again, just for example, if the Court were to say that under
11  Rule 16 Mr. Doyle could be required to appear tomorrow, we
12  could debate whether that's rally a fair interpretation of
13  Rule 16, which I trust we would agree that there isn't.  I'm
14  just using it as an example.
15             There is no other rule that even arguably authorizes
16  the Court to require a represented party to make a Pretrial
17  appearance; only Rule 16, which we're not dealing with here.
18             THE COURT:  And Rule 16 as it implies has the power
19  to consider settlement, but --
20             MR. BANK:  If a Rule 16 conference has been
21  scheduled, yes, but it's not been scheduled for tomorrow and,
22  again, as a more practical matter this is not a personal
23  injury claim where I'm demanding 20,000 for my client and
24  they're offering such and such.  It's not a settleable type of
25  case.  Is the Government going to say we'll take half an

affidavit, for example?  Of course not.

    THE COURT:  And of course there is the general power of a court to protect itself against frivolous suits and suits for an unacceptable reason, such to harass.

    MR. BANK:  I hope you're not suggesting that this is a case like that.

    THE COURT:  I am not saying that it is.

    MR. BANK:  We did a very extensive, well-reasoned, thorough brief which I will note, by the way, that in the Government's reply -- the Government's reply contains nothing but a reiteration of their original position and completely misstating our position.  I'd be happy to draw up a document, a supplemental brief or letter, to show the Court that the Government was, to say dishonest would be a nice way to put it, but the reply simply completely misstates the facts and the law involved in this case.  And, with all due respect to the Government, there's only one side here who discussed the law in a very forthright, honest fashion and that's Mr. Doyle's side.  I would be happy to brief that in more detail than I have just now.

    THE COURT:  Now, Mr. Doyle is saying that you represent him, that he sought you out to represent him; is that correct?

    MR. BANK:  I do represent him, yes.  I'm not going to discuss attorney/client privileged matters.  I am

1  authorized to represent him and I've been properly retained to
2  do so.  He's fully aware that I'm in court today representing
3  him.  There's nothing untoward in the manner by which I became
4  his attorney here.  I just don't want to divulge any or
5  suggest anything that could be privileged.  That's his
6  privilege, not mine.
7           THE COURT:  Is he admitted in other courts?
8           MR. BANK:  Yes.  As we stated in the complaint and
9  reiterated in the brief, he meets all the qualifications for
10 admission to this court.  The only issue is the affidavit
11 requirement that we're challenging.  That's it.
12          THE COURT:  And he came to you and asked you to
13 represent him on this issue?
14          MR. BANK:  He retained my services.  I'm not trying
15 to be cagey, but I'm not going to recount some conversation
16 that we had because I don't want to violate my client's
17 privilege.  I just won't do that.  I will say that under all
18 applicable law and ethical standards, I've been properly
19 retained.
20          THE COURT:  He is not a member of your office?
21          MR. BANK:  He's worked with me on a quasi basis over
22 the years.  He's not an employee of mine.
23          THE COURT:  When you say "over the years," plural?
24          MR. BANK:  Yes, we've worked together.
25          THE COURT:  So you have known him for a long time.

1    MR. BANK:  I have known him for a long time.
2    THE COURT:  Well, I do not understand why the case
3 is brought.  I am puzzled by it.  You have retained him over a
4 course of years.  You certainly would meet the requirement of
5 the local rule.
6    MR. BANK:  You mean for me to be the sponsor?
7    THE COURT:  That is right.
8    MR. BANK:  Well, we addressed that in the brief and
9 I guess the main argument would be that as to whether I would
10 actually be willing to be his sponsor and as to whether
11 Mr. Doyle would be willing to have me be his sponsor, that
12 can't be decided based on the face of the complaint.  That's a
13 discovery issue.  There are a couple of other issues tied in
14 with the very complaint we brought here which is that
15 Mr. Doyle and I would have to agree on what it would take for
16 me to be able to properly assess his character.
17    The complaint doesn't indicate that we've agreed
18 upon that, number one, and number two, and I think this is
19 something the court would be concerned about if I were to be
20 the sponsor; I've represented Mr. Doyle not just in this case,
21 of course, but in others.  I ask somewhat rhetorically,
22 wouldn't I be suspected of having a bias?  What if -- just for
23 example, what if I thought Mr. Doyle was of very poor
24 character and should not be a member of this bar -- just for
25 example.  Do I want to say that in a statement that could be

1  made public, or even if it isn't, and have my client possibly
2  and very likely decide he doesn't want to avail himself of my
3  services anymore?
4           I'm amazed that the court would even allow -- I
5  don't mean Your Honor, I mean the court in general would even
6  allow someone in my situation to be the sponsor.  I have a
7  clear conflict of interest.  I've represented Mr. Doyle over a
8  number of years in a number of cases.  Obviously, if I were to
9  write that Mr. Doyle was of very poor character, and I only
10 say that by way of example, do I really expect Mr. Doyle to
11 continue to retain me?  No.
12          THE COURT:  He would not use you as a character
13 reference, if that situation required.  You are a member of
14 our bar.  I would assume that people that assist you in your
15 work, as you suggest, would be of reasonably good character.
16          MR. BANK:  That might well be, but that's not a
17 guarantee.  I might, for example, say -- I might think that
18 Mr. Doyle is of sufficient character to assist me in whatever
19 way he has, but not of sufficient character to be a member of
20 the bar.  But my only point is even if I submitted a glowing
21 sponsor affidavit, given my relationship with him,
22 attorney/client, why would this court assume that that's a
23 proper thing for me to do?
24          Of course it gives the appearance of impropriety.
25 This lawyer has a motive to be sure that he always speaks

positively about his client or if I were to do say that Mr. Doyle was a poor character, of course --

THE COURT: Well, you wouldn't. He wouldn't use you as a character reference.

MR. BANK: Not necessarily. He doesn't know what I'm going to say ahead of time.

THE COURT: Of course he does.

MR. BANK: Not necessarily. Again, that's why I think there is a larger problem which is that --

THE COURT: That is why I do not understand the nature of the case and why it is brought. If you have had a long relationship with him, I assume you would speak for him in court.

MR. BANK: Whether I am qualified or not to do so, again -- first of all, Mr. Doyle is not obligated to choose me specifically to be his sponsor. He might have that right in terms of I meet that qualifications; I've known him for at least a year and so forth. For my part, I'm not obligated to be his sponsor. I'm not obligated to be his sponsor. Maybe I don't want to be. I'm not saying that's the case. What I'm saying is that all of these speculations should not be decided now on the face of the complaint. Only discovery can show that. And if in discovery Mr. Doyle were to say, oh, I'm willing to have Mr. Bank say whatever he wants in an affidavit and I say I'm wiling to do that, that's a different story.

Proceedings    10

That's not the case right now.  That can't be assumed.  That is why we have discovery.

THE COURT:  You wouldn't support the position that he is a person of good character?

MR. BANK:  How do you know that?  That is my point.  How is that known?

THE COURT:  Why would you be so stupid as to --

MR. BANK:  You just answered my question.  It would be stupid because I would take the risk of losing a valued client.  I would think that the Clerk, knowing of our relationship, wouldn't even accept an affidavit from me.  Again, he might.  I don't know what the inner workings there are.  I think it would be odd and really expose, to be blunt if I may, I think it would really expose this requirement for the farce that most lawyers treat it as.

When I have a clear conflict of interest, a clear, indisputable conflict of interest and now I'm going to give a glowing evaluation of Mr. Doyle and the Court is going to accept that from me?  I think that speaks very poorly of the system.  I think it should be somebody who doesn't have a conflict of interest.

THE COURT:  Such an affidavit would be accepted by the Court, of course.

MR. BANK:  I think it shouldn't be.

THE COURT:  How long has he been in practice?

1  MR. BANK:  Roughly a decade.  I can't give an exact
2  date, but roughly that.
3        THE COURT:  Do you know in what court?
4        MR. BANK:  He's admitted in the State of New York,
5  in the state court here.  I'm not sure if there are -- there
6  might have been another admission or two that he's no longer
7  admitted, not due to any discipline.  He just might not have
8  kept up with the admission duties.  I believe -- he is
9  admitted in this court -- in the state court here.  I'm sorry.
10       THE COURT:  He went to what school?
11       MR. BANK:  Vanderbilt.
12       THE COURT:  It seems to suggest such frivolity.
13       MR. BANK:  I don't know why.  Only because I might
14  be able to be a sponsor?
15       THE COURT:  Only because it's inconceivable that you
16  would not -- where does he reside?
17       MR. BANK:  In New Jersey.
18       THE COURT:  And he's admitted in New York State
19  court?
20       MR. BANK:  New York State, yes.  Like we said,
21  Judge, he meets all the qualifications for admission.  The
22  only issue here is the affidavit requirement, but it seems
23  that the only -- so far anyway, the only concerns that the
24  Court seems to be focused on are concerns about whether --
25  about me being the sponsor.  And, again, maybe I'm not willing

to be the sponsor. Maybe he doesn't want me to be the sponsor.

THE COURT: Excuse me. I am not saying that you need to be the sponsor. I am concerned about the frivolity of a suit of this kind where the person has been admitted for ten years and has, I assume, worked with New York attorneys, you for one, for example.

MR. BANK: Well, he's worked with me. I don't know of any other employment that he's had or anyone else that he knows well enough where he can in good faith say to somebody, you're a member of the bar and you know me well enough for a year to assess my character. Again, from my personal experience, I've been admitted to courts including the Second Circuit where at the time I didn't know anybody who was admitted to the Second Circuit and I have documentation, of course, and if I recall correctly, which I'm quite sure I do, that I called the Clerk's office and I told them just what I told Your Honor. And I was able to either fill out another form or explain that I didn't know anybody and they made an exception. Other courts don't make exceptions.

So the idea that this case, leaving aside the merits of it, is frivolous; that Mr. Doyle must know X number of people who could sponsor him, that's all speculation. If discovery showed that and --

THE COURT: I do not want to get into discovery.

1  That is what Rule 16 is in part designed to prevent,
2  unnecessary discovery.
3              MR. BANK:  Right.
4              THE COURT:  And the Supreme Court has been very
5  clear that it wants us to bring a reasonable position.  What I
6  am curious about is why this suit is being brought and the
7  U.S. Attorney is put to the expense of defending this?
8              MR. BANK:  I would have to ask, what about the case
9  is frivolous?  I don't see any frivolousness in the complaint
10 in this case, but I'll be happy to address any concerns.
11             THE COURT:  It seems to be frivolous because I
12 cannot conceive of a young person being in this position.  I
13 thought he must be younger than he apparently is.  How old is
14 he?
15             MR. BANK:  He went to law school -- he didn't go to
16 law school right out of college.  He's middle-aged.
17 Regardless, from my own experience, I had to get admitted to
18 the Second Circuit without the sponsor affidavit.  I didn't
19 know anybody who was admitted, even though I had been
20 practicing for a number of years.  Again, he's worked with me
21 over the years.  It's all speculation.  It's completely
22 unknown and the complaint doesn't indicate that he knows
23 certain people who would sponsor him and even if he does, like
24 we say in the complaint, for Mr. Doyle to act in good faith
25 and the sponsor to act in good faith, they would have to agree

on what things are necessary and we talk about that and one of the issues that is part of the case is you and I, for example, may have a very different notion of what makes somebody's character good.

Mr. Doyle believes, and I think it's his right to believe; after all the affidavit requirement doesn't give any guidance whatsoever, that he has a right to believe that his political views and philosophical views and so forth are relevant and a sponsor would have the right to be relevant.  I don't think there's any question that on numerous social and political issues there are people who would say, you voted for so-and-so or you believe in this or you don't believe in that, you're a bad person.  I'm not saying I take a position like that or don't take a position like that, but lots of people do.  And Mr. Doyle is entitled, given that there's no guidance at all in the affidavit requirement, he's entitled to take that view.  It's not unreasonable.

There are a lot of people who say if you voted for so-and-so, you're a horrible person.  If you didn't vote for so-and-so you're a bad person.  He's allowed -- given the total silence and the total lack of guidance in the affidavit requirement, he's forced to fill in that vacuum.  He has no other option.  So in his view he would not be able to comply in good faith with the affidavit requirement if he were not to reveal a lot of personal information, personal viewpoints,

experiences. To really and truly know of someone's character takes an awful lot. As well as I might know him, I don't follow him around 24 hours a day. Maybe he did something last week that would make me have a very different view of his character, good or bad. I don't know that. And how can I assess someone's character without knowing an awful lot more than I do? Even parents and children don't properly assess their character. They don't know everything.

Again, he has the right to have that view; that in order to act in good faith with respect to the sponsor affidavit that he would have to disclose to the sponsor a lot more than just, okay, I have no criminal background record, I went to Vanderbilt, I graduated number such-and-such in my class and things of that sort of vague nature. That might be, and I think I would argue, that that ought to be all the sponsor application requires because it means nothing. He has to fill it in a vacuum and he's done it in an honest, good-faith way.

And he's -- the irony is I think with due respect to the system, he's actually taken the requirement seriously when I think most lawyers take it like a farce. I'll -- I don't think it's taken seriously by most. I really don't. I'll find a buddy of mine to sponsor me. He'll say that I'm a good guy; or I barely even know him. I met him a couple of times. He's a friend of a friend. He'll sponsor me. Mr. Doyle is

Proceedings 16

1  not taking that point of view.  He's taking it seriously.
2           THE COURT:  Do you want to respond in any way?
3           MR. MODAFFERI:  Your Honor, just very briefly
4  because, you know, the United States has an obligation to
5  avoid unnecessary litigation and we're here to decide whether
6  plaintiff has to appear tomorrow.  With everyone here in the
7  courtroom, if he agrees that Mr. Bank can be his sponsor and
8  Mr. Bank agrees that he would be his sponsor, the case is then
9  moot because the relief that plaintiff is seeking is to be
10 admitted to the bar.  And, so, I think that that would be a
11 good first step in -- putting aside whether the Court has
12 jurisdiction and putting aside the merits of the case, I think
13 that the plaintiff should appear tomorrow because there's a
14 likelihood that the case would become moot to the extent that
15 he agrees that Mr. Bank could be his sponsor.
16          MR. BANK:  We're not going to agree to that.  I'm
17 not going to divulge any attorney/client privilege.  Obviously
18 if Mr. Doyle wanted me -- if he was willing to have me sponsor
19 him and if I were willing to do so and we could agree on all
20 the parameters that would need to be met; i.e., what I would
21 have to know that I might not already know and such, we would
22 have done that already.  Again, there's nothing in the
23 complaint that even suggests that there's some sort of issue.
24 Obviously, Mr. Doyle and I know of our relationship.  We're
25 not going to learn anything today or tomorrow that we didn't

1  know about our relationship -- that we don't know now.  So
2  that suggestion, I respect it, but it just doesn't solve
3  anything.
4              THE COURT:  The Court, having heard the plaintiff's
5  motion, denies the argument further than that which we have
6  already had and reinstates, reasserts and confirms its order
7  requiring the plaintiff to be present in court tomorrow when
8  motions will be heard with respect to this case.
9              MR. BANK:  May I ask, as I did in the motion, what
10 is the basis of the Court's ruling that he has to appear?
11 Where is the authority?
12             THE COURT:  I believe I have indicated that Rule 1
13 and Rule 16 and the general authority of the Court to protect
14 itself against frivolous suits gives sufficient authority.
15             MR. BANK:  Then I would ask a couple of questions
16 which is --
17             THE COURT:  I do not care to be cross-examined.
18             MR. BANK:  No.  With all due respect, I take --
19             THE COURT:  Excuse me.
20             MR. BANK:  -- exception to the ruling.  I don't
21 think it's an honest ruling.  There's nothing in Rule 1.  I
22 explained that and the Court --
23             THE COURT:  Excuse me.
24             MR. BANK:  Go ahead.
25             THE COURT:  I have given you time to assert your

1  position and I have denied what is apparently a motion to
2  avoid bringing your client in to court.
3           MR. BANK:  Right, but it seems -- with all due
4  respect, it seems to me that the Court is ruling by fiat and
5  not by law.  Rule 1 has nothing to do with it.  Again, it's --
6           THE COURT:  Excuse me.  I have a calendar.  I do
7  not care to hear further argument.
8           MR. BANK:  That's fine.  On a practical purpose --
9  for practical purposes, the only -- Mr. Doyle, he can call in.
10 He cannot appear tomorrow.  He can call in at 10:30.
11          THE COURT:  No, I want to see him.
12          MR. BANK:  He will not be able to be here tomorrow.
13          THE COURT:  When can he appear?
14          MR. BANK:  I don't know.  He's on disability.  So we
15 can adjourn it and hopefully he --
16          THE COURT:  What is his --
17          MR. BANK:  He has a disability.
18          THE COURT:  Physical?
19          MR. BANK:  Physical disability.  We can adjourn it
20 for, I would say, at least two weeks with the hope that he
21 would be able to appear, but I cannot -- because he cannot
22 guarantee it, Your Honor, obviously I cannot either.
23          THE COURT:  What date do you wish?
24          MR. BANK:  I would say 30 days, three or four weeks
25 would be fine.

Proceedings 19

1    THE COURT:  All right.  Give him a date.
2    MR. BANK:  And I would also request, consistent with
3 what we said in our conclusion of the motion, that the Court
4 issue a written order explaining the basis or bases of his
5 ruling today, as well as the initial ruling.  I think the
6 ruing is by fiat and not by law.
7    THE COURT:  The motion is denied.
8    THE COURTROOM DEPUTY:  March 18th.
9    THE COURT:  March 18th at 10:30 a.m.
10   MR. BANK:  Thank you.
11   MR. MODAFFERI:  Thank you, Your Honor.
12   THE COURT:  Thank you.  Will the parties share in
13 the cost of this transcript?
14   MR. BANK:  I would like the transcript and so we can
15 talk about that.
16   MR. MODAFFERI:  I need to seek approval, but I don't
17 see a problem.  Daily transcript.  Thank you.
18
19               (Matter adjourned.)
20
21                   - ooOoo -
22
23
24
25